## St. Paul Division No. 1, Sons of Temperance,

*v.*

## Joseph R. Brown et al.

The plaintiff, having caused to be conveyed to Brown the premises in question, as security for the repayment of a sum of money borrowed from Brown, appointed H. T. & B. its agents, "to obtain from Brown, or his assigns, a reconveyance by a tender of the money due," and also authorized said H. T. & B., in case said Brown refused to comply with the terms of his said bond, to take legal measures for the recovery of said premises. *Held,* that either H., T. or B. was authorized to make the tender.

In May, 1849, there was organized in Saint Paul a branch division of the Sons of Temperance, which was known and styled "Saint Paul Div. No. 1, Sons of Temperance," which division continued to exist until after the passage of the act of the Legislature hereinafter mentioned. In March, 1851, the Legislature, by an act which was duly approved, provided, that from and after the passage of said act, Comfort Barnes, and others, and their associates and successors, "be, and they are hereby ordained a body corporate and politic, under the name of the 'Saint Paul Div. No. 1, Sons of Temperance.'" At the date of the passage of said act, the persons therein named were, with others, members of said branch division first named, and the said branch division, and the members composing the same, were the persons intended to be incorporated by said act of the Legislature. This act authorized the division to sue and be sued, contract and be contracted with, and to take hold and dispose of real and personal property. *Held,* that these facts and circumstances, together with the fact that the transactions with Brown were the exercise of corporate powers, were sufficient to justify the referee in finding that the Division did accept said act of incorporation.

Brown loaned to the division the sum of $800, on the condition that it would cause to be conveyed to him the property in question as security for the repayment of said sum ; he also binding himself to convey said premises to the Division on the repayment to him of said money and interest. *Held,* that the fact that the property was not conveyed to Brown directly by the Division, is no defense in an action on his bond for a specific performance, nor is it material when the Division acquired, or whether it ever owned, said property.

S. of T. v. Brown et al.

This action was brought in the Ramsey County District Court, and the issues joined therein were tried before a referee, who found for the plaintiff, and judgment was entered up in its favor; from this judgment an appeal is taken by the defendants to this Court. A sufficient statement of the case appears in the opinion of the Court.

H. R. BIGELOW, for appellants.

SMITH & GILMAN, for respondent.

*By the Court*—WILSON, CH. J.—The referee in this case, finds among other things, as matter of fact, that in May, 1849, there was organized at St. Paul, a branch or subordinate division of the Sons of Temperance, which was known and styled "St. Paul Division, No. 1, Sons of Temperance;" that said division continued to exist until after the passage of the act of the Legislature hereinafter mentioned.

That on the 25th of March, 1851, the Legislature of the Territory of Minnesota passed an act entitled "An act to incorporate the St. Paul Division, No. 1, Sons of Temperance," which was duly approved, and provides "that from and after the passage of this act, Comfort Barnes, J. J. Dewey, J. R. Brown, Wm. H. Tinker, George H. Oakes, C. P. V. Lull, W. P. Murray, A. R. French, Wm. Henry Forbes, B. F. Hoyt, and their associates, of the county of Ramsey, town of St. Paul, and their successors, be and they are hereby constituted, ordained and declared, a body corporate and politic, under the name of the St. Paul Division, No. 1, Sons of Temperance, and by that name they and their succesors shall and may have perpetual succession, and shall be a person in law, capable of suing and being sued; * * and that they and their successors, by the name of the St. Paul Division No. 1, Sons of Temperance, shall be, in law, capable of acquiring and holding * * property," &c.

The referee further finds, that at the date of the passage of said act, the persons therein named, were with others, members of said branch or subordinate division first named. That said division did not apply, as an association, to the Legislature for the passage of said bill, but the same was applied for by some of the ·members thereof, and that after the passage of the act, the division did not, previous to the transaction with Brown, pass any resolution or take any action expressive of their willingness to accept of, or of their assent to, the incorporation provided by said act, nor did the persons therein named take any such action; that prior to the 20th of December, 1852, the west half of lot 10, block 23, in St. Paul, had been purchased with the money of, and for the use of, said division, and the title thereto taken and held in the name of Comfort Barnes, Wm. H. Tinker, and Joseph R. Brown, and said division had commenced and partly completed a building theron, to be used in part as a hall for its meetings; that prior to said date, said division, having become involved in debt and unable to complete said building, entered into negotiations with the defendant Joseph R. Brown, then a member and one of the trustees of said division, for the purpose. of effecting a loan to enable it to clear itself from debt, and to finish its building; that in the course of the negotiation, the defendant Brown offered to loan the division the sum of $800, upon interest at the rate of ten per cent. per annum, to be repaid on the first day of May, 1853, or upon any first day of May, until the first day of May, 1858, upon the division causing its trustees, in whom the title of such real estate then was, to convey the same to him, and that he would execute a bond to convey said premises to said "Saint Paul Division, No. 1, Sons of Temperance," upon being paid by said division through its trustees or agents, the said sum according to said terms; that afterwards, on the 17th day of December, 1852, at a regular meeting of said division, a resolution was duly passed by the division, instructing its trustees (said

Barnes, Tinker and Brown,) to accept said proposition, and to convey said real estate to said Brown in pursuance thereof, and afterwards, on the 20th day of December, 1852, said trustees did accept the proposition, and thereupon Brown loaned to the division the sum of $800, and as security for the repayment of the same, Barnes, Tinker and Brown, describing themselves as trustees of St. Paul Division, No. 1, Sons of Temperance, of the county of Ramsey and territory of Minnesota, conveyed to said Joseph R. Brown said real estate, and at the same time Brown executed and delivered to said trustees for the division, his bond conditioned to reconvey on the payment of said sum and interest as aforesaid; that thereupon Brown went into possession of said real estate, and has remained in possession, himself and his assigns until the present time; that at the time of the conveyance and execution of said bond, said real estate was of the value of $1,500; * * that at the time of said negotiations, and of the passage of said resolution, and of the execution of said bond, all of the persons named in the said act of the Legislature, except Wm. P. Murray, were members of said division; that the passage of said resolution with said negotiations, and the execution of said conveyance and bond, were the only *associated* acts of said division, or of the persons named in said act of the Legislature, or their associates, up to that time, evincing any intention to accept or act under the grant contained in said act of the Legislature; that on the 10th day of May, 1853, said Brown, with his wife, conveyed said real estate, by warranty deed, to the defendant, Jacob W. Bass, who, at the time of the conveyance to him, had full knowledge of the execution of said bond, and that the same was in full force; that on the 22d of April, 1856, said division, at the meeting held on that day, appointed B. F. Hoyt, Wm. H. Tinker and Comfort Barnes, its agents to obtain a re-conveyance of said real estate, by a tender of the money then due J. R. Brown or his assigns, according to the conditions of said bond; that pursu-

ant thereto, said Tinker did, on the 1st day of May, 1856, in behalf of the division, tender, produce and offer to said Bass, in payment of said debt and interest, and upon said bond, the sum of $1069 (being the full amount then due) in gold and silver coin of the United States, which money, so tendered, the said Bass refused to accept; that on or about the first of November, 1859, Bass, by quit claim deed, conveyed to the defendant Prince; that said conveyance was not made upon a sale in good faith of said real estate, or for a valuable or any consideration; that the deed from Brown to Bass, and the deed from Bass to Prince, have been recorded.

As conclusions of law, the referee finds: (1) That said Saint Paul Division, No. 1, Sons of Temperance, so formed and organized in May, 1849, and the members composing the same, were the persons intended to be incorporated by the said act of the Legislature of the 25th of March, 1851, and that thereby said division was enabled to become a corporation upon at any time accepting the grant in such act contained. (2.) That the resolution of said division to accept the proposition of Brown, and to receive said bond, amounted in law to an acceptance of the grant contained in said act of the Legislature, and that thereupon said division became a corporation, with all the powers and privileges conferred by said act. * * (3) That the plaintiff is entitled to a judgment that the defendants, Jacob W. Bass and John S. Prince, convey to the plaintiff by deed with covenants of warranty, the said west half of lot No. 10, in block 23, in the town of St. Paul, with the buildings and appurtenances thereunto pertaining.

The defendant's counsel claims, (1) that no valid tender was proven; (2) that neither the facts found, nor the evidence given, justify the conclusion that the said division accepted the act of incorporation; (3) that the judgment must be reversed on account of the erroneous rulings of the referee, refusing to receive evidence offered by the defendants; and (4) that the judgment ordered by the referee must in any event be modified.

As to the tender, we think it is clearly proven. The evidence shows that at a meeting of said division, held April 22, 1856, B. F. Hoyt, Wm. H. Tinker and Comfort Barnes, were "appointed the agents of the division to obtain from J. R. Brown, or his assigns, a reconveyance of the Temperance Hall building and ground, (the premises in question,) by a tender of the money due J. R. Brown, or his assigns, according to the conditions of the aforesaid bond, and to receive a title of the property in trust for the division." It was further resolved at said meeting, "that in case said J. R. Brown, or his assigns, refuse to comply with the terms of his written bond, to reconvey the said property to the division, after tender,  *  *  the said agents are authorized to take legal measures for the recovery of the same." When these parties were appointed agents to obtain for the division a title to the property, the act being merely ministerial, either one was authorized to make the tender. See Bacon's Abridgment Tender (a).

There is nothing in the language of this resolution requiring the tender to be the joint act of the three agents. Whether if the agents of the division appointed to obtain a reconveyance of said premises, had made a demand of the deed to themselves, in trust for the division, Bass would have been justified in refusing to make *such* deed, it is not material to inquire here. The refusal of Bass to receive the money, was equivalent to a refusal to make the deed, either to the division directly, or to its agents in trust for it. A demand of a deed was unnecessary. See *Brown v. Tilson*, 25 N. Y. 197–8. The charter in this case, upon its acceptance, conferred corporate powers *in presenti* and unconditionally; it was beneficial to the division, authorizing them to contract and to be contracted with, sue and be sued, to take, hold and dispose of property, real and personal, and it was granted, at the instance of some of the members of said division. Under such circumstances slight evidence of acceptance was sufficient. The transaction with Brown was authorized, and can be held valid

only on the hypothesis that the division had accepted the act of incorporation, as an association of persons unincorporated, has no power to take or hold real property, or enter into or enforce contracts. We think, therefore, that the exercise of such corporate powers was evidence sufficient to justify the referee in finding that the division had accepted said act of incorporation. See Angell & Ames on Corp. and notes, Sec. 83–84, and cases cited in notes. The evidence does not justify the conclusion that a majority of the members were not present at the meeting which accepted Brown's proposition.

The defendants, on the trial, offered to show that the lot was purchased by the division before the act of incorporation was passed, and that the title remained unchanged up to the time of the transaction with Brown. The plaintiffs' counsel objecting, this evidence was not received, and to its exclusion the defendants' counsel excepted, and insists in this court, that the ruling of the referee excluding it, was erroneous. We see no error in this ruling. It is not denied but that the division caused the property to be conveyed to Brown in pursuance of the arrangement with him to loan to it $800, and convey to it the property on the payment of said sum of money, with interest, at the time designated. Whether the conveyance to Brown was made directly by the division, or by Barnes, Tinker and Brown, is wholly immaterial; in either case it was a sufficient consideration for the bond. The bond and deed were made at the same time, as part of the same transaction, each being the consideration for the other; there is, therefore, no want of consideration, and no fraud, mistake or surprise, is pretended. Whether, therefore, the plaintiff in this action ever owned the property, is a question immaterial in the decision of the issues involved in this case. Brown, by his bond, bound himself to convey on certain terms the property in question to the plaintiff, and (the plaintiff having performed) unless he shows a want of consideration, or some fraud, mistake or sur-

prise in the inception of the bond, or hardship or injustice in its enforcement, he is bonnd to comply with its terms. He has not even attempted to do this, and the contract must, therefore, be enforced as prayed for by the plaintiff. This, so far from being a hardship, is most manifest equity. The defendants, Bass and Prince, stand in no better position than Brown, the former having purchased with notice, and the latter having paid no consideration.

It is claimed that the judgment should be modified, as the deed to Brown was for the west half of the lot with *a reservation*, and the judgment requires a conveyance of the entire west half. The bond obligates Brown to convey the west half of lot ten. If there was any mistake in the bond in this respect, the defendants should have had it reformed; not having alleged such mistake, or asked for such reformation, the court must enforce the bond according to its terms.

We think the defendants, Bass and Prince, should have been required to convey, with covenants of warranty. Perhaps the judgment would be more specific, had it provided that the covenants of warranty should be merely against the grantor and those claiming under him. We do not think that either Bass or Prince should be required to convey by deed with unlimited and general covenants of warranty; nor do we understand the judgment to require this.

The judgment is affirmed.

Berry, J., dissenting.—I am unable to assent to the following, being the second conclusion of law found by the referee in this case, to-wit: "That the resolution of said division to accept the said proposition of said Joseph R. Brown, and to receive said bond, amounted in law to an acceptance of the grant contained in said act of assembly, and that thereupon said division became a corporation, endowed with all the powers and privileges conferred by said act of assembly."

As the judgment could not be supported without this conclusion, I think it should be reversed.