CASEY KONANTZ AND ANOTHER v. THOMAS H.
STEIN AND OTHERS.
EARL ZEHNDER, TREASURER OF DAKOTA
COUNTY, RESPONDENT.

167 N. W. (2d) 1.

March 14, 1969—No. 40392.

34

*Grannis & Grannis,* for appellants.

*Jerome Daly,* for respondents Konantz.

*J. Jerome Kluck,* County Attorney, and *Jack A. Mitchell,* Assistant County Attorney, for respondent Zehnder.

*Marshall K. Sigford,* Examiner of Titles, Hennepin County, and *George Maloney,* amici curiae.

*Everett L. Peterson,* Examiner of Titles, Ramsey County; *Lawrence L. Lenertz,* Examiner of Titles, Dakota County; *William E. Manley* and *Frederick W. Lambrecht, Jr.,* Deputy Examiners of Title, Ramsey County; and *Stringer, Donnelly & Sharood,* amici curiae.

*Richard C. Smith,* amicus curiae.

*Richard D. Weiblen,* amicus curiae.

SHERAN, JUSTICE.

Appeal from a judgment of the district court.

In this action for ejectment and damages for wrongful interference with the possession of real estate occurring about May 29, 1963, resolution of the rights of the parties came to depend on who then owned a 90-foot strip of land lying between a tract of real estate admittedly belonging to plaintiffs, Mr. and Mrs. Casey Konantz, (the Konantz tract) and a tract admittedly owned by defendant Mrs. Thomas H. Stein (the Stein tract).

Mrs. Stein's claim of ownership was based on a deed dated July 21, 1962, the description of which included the 90-foot strip. Mrs. Stein's vendor had a good record title to it, confirmed by a judgment in title registration proceedings commenced September 6, 1960, and terminated with the entry of the decree on April 12, 1961.

The claim of Mr. and Mrs. Konantz to the disputed strip is based upon an alleged title acquired before the registration action was commenced either by adverse possession[1] or through the practical location of a boundary line. Although the Konantzes were using the strip for pasture in 1960–1961 when the registration action was commenced and pending, Mrs. Stein's predecessor in title failed to include them as named party defendants in the registration proceedings.

---

[1] In Minnesota, adverse possession of land for the period of time prescribed by the statute of limitations not only bars the remedy, but practically extinguishes the right of the party having the true paper title and vests a perfect title in the adverse holder. Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060; McArthur v. Clark, 86 Minn. 165, 90 N. W. 369; Ross v. Cale, 94 Minn. 513, 103 N. W. 561; Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 46 A. L. R. 785; Mellenthin v. Brantman, 211 Minn. 336, 1 N. W. (2d) 141.

The Konantzes continued in possession of the disputed strip in 1962 when Mrs. Stein acquired her deed. Before Mrs. Stein purchased, she knew that they were in possession of the land now in controversy although she did not know until after the purchase was completed and a survey made that the true boundary line of the land which she had bought by description included the strip in dispute.

The trial court made findings of fact and conclusions of law in plaintiffs' favor, holding, in effect, that the registration decree upon which Mrs. Stein relied did not extinguish the rights of the Konantzes in the strip of land because they were in possession when the registration proceedings were started and were not served with process therein. Because of the statewide significance of the basic issue, briefs amicus curiae were requested and submitted [2] and the appeal first considered by a division of this court, was reargued before the court sitting en banc.

Aided by the reargument, we are agreed on these propositions:

(1) If the Konantzes had acquired title to the land in controversy by the time the registration proceedings were commenced, whether by adverse possession or practical location of the boundary line, and if they were then in possession of it, they were entitled to notice and opportunity to be heard. Because they had no actual notice of the pendency of the proceedings and no notice was ever given to them in the manner specified by law, the decree entered in the registration proceedings could not extinguish this interest.

(2) On the other hand, if the Konantzes had not acquired title to the strip of land by the time the registration proceedings were accomplished, they have no present interest in the disputed strip. Once a title is registered, it is impossible thereafter to acquire title to the registered land by holding adversely to the registered owner.

(3) If the Konantzes had title at the time the registration proceedings were commenced, their claim to the land cannot now be defeated by the Steins on the theory that Mrs. Stein was a good-faith purchaser for value

[2] Briefs amicus curiae were submitted by Richard D. Weiblen; Richard C. Smith; Marshall K. Sigford and George Maloney; Everett L. Peterson, Lawrence L. Lenertz, William E. Manley, Frederick W. Lambrecht, Jr., and Messrs. Stringer, Donnelly and Sharood.

of registered land without notice of the Konantz claim. This is so because the testimony establishes that the Konantzes were in possession of the disputed strip at and before the time Mrs. Stein purchased and that Mrs. Stein knew this to be the fact before she bought the land now owned by her.

(4) If the Konantzes had title to the disputed strip when the registration proceedings were carried out, their failure to attack the registration directly within the time specified by Minn. St. 508.26 (60 days from entry of the decree) and § 508.28 (6 months from entry of the decree) cannot bar them from asserting their title since they had neither actual nor constructive notice of the pendency of the registration proceedings and the entry of the registration decree within the time so limited.

(5) Where a claim of title adverse to that of the record owner is based on the theory that title was acquired by adverse possession or practical location of a boundary line, there should be a precise finding by the trial court that the factual elements necessary for such title acquisition have been established by the party making such a claim. In the absence of adequate findings of fact, the ultimate rights of the parties cannot be determined by this court. Since the evidence appearing in the record is vague and equivocal with respect to the relevant characteristics of the possession which had allegedly ripened into title by the time the registration proceedings were commenced, the matter must be remanded to the district court for a new trial.

■ Registration of titles is authorized and regulated by c. 508 of our statutes. The object of this law, first adopted in 1901, is to afford a method of acquiring a decree of registration and a certificate of title free, so far as possible, from all encumbrances and adverse claims not noted on the certificate. It is evident that the marketability of real estate is enhanced if prospective purchasers can rely on a certificate of title which purports to disclose fully the status of the title.

Chapter 508 sets out the procedure to be followed to secure such a decree of registration and title certificate. The process is initiated by filing an application for registration with the district court for the county in which the real estate involved is located. To the extent that its jurisdiction is invoked, the district court in these proceedings has power to

hear evidence and, if the case is a proper one, ultimately to enter a decree of registration determining the ownership of all interest in the realty. Minn. St. 508.05 to 508.10. To enable the applicant to subject all persons having possible interests in the real estate to the jurisdiction of the district court, provision is made for the issuance of a summons (§ 508.15) to be served as a summons in a civil action, upon the proper parties. § 508.16. Exception to the requirement of such service is limited to parties "who are not residents of the state or who cannot be found therein" and "persons or parties unknown." As to them, service by publication is permitted. § 508.16.

In the registration proceedings instituted by Mrs. Stein's predecessor in title, a decree of registration was entered and a certificate of title was issued which, by description, embraced the 90-foot strip conveyed later to Mrs. Stein. But no summons in that action was ever served on the Konantzes even though they were in possession of the 90-foot strip when the registration proceedings were commenced. A published summons is directed to "all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the application herein." If "unknown," the Konantzes were such persons because the 90-foot strip was included in the real estate in the application; they were in possession of the 90-foot strip; and they claimed title to it. In the registration proceedings, the district court found title to the described realty to be in Mrs. Stein's predecessor in title. No exception was made in the decree of registration and there was no notice on the certificate of title then issued bespeaking an interest of any kind on the part of the Konantzes in that portion of the described tract of which they were then in occupancy.

Read literally, the effect of the registration decree and certificate of title then issued would be to extinguish any rights that the Konantzes had in this land. This is so because § 508.22 provides in part:

"* * * [E]very decree of registration shall bind the land described therein, forever quiet the title thereto, and be forever binding and conclusive upon all persons, whether mentioned by name in the summons, or included in the phrase, 'all other persons or parties unknown claim-

ing any right, title, estate, lien, or interest in the real estate described in the application herein' * * *.''

The categorical language of the statute must, however, be read in such a way as to be consistent with the constitutional requirement that no person shall be deprived of his property without due process of law.[3] Due process of law as applied to a proceeding which may effect a transfer of title to land from a person in possession of it to the applicant for the decree requires notice and opportunity to be heard. This requirement of notice cannot be fulfilled by a publication of the summons when personal service or its equivalent can be easily accomplished. Etzler v. Mondale, 266 Minn. 353, 123 N. W. (2d) 603, is illustrative of the principle. We held there that owners of real estate within the area encompassed by a dedicated plat were entitled as a matter of due process to notice of the proceedings to vacate a part of such real estate designated as a park. With specific reference to § 505.14, which makes provision in such instances for the determination and payment of damages to owners or occupants of realty affected by the vacation proceedings, we said (266 Minn. 364, 123 N. W. [2d] 611):

"* * * It is true that under this section provision is made for publication and posting of notice of proceedings to vacate platted areas, but under circumstances such as are presented in this case, in our opinion this method of obtaining service would fall far short of due process under the Fourteenth Amendment of the Federal Constitution as construed by the United States Supreme Court. See, Walker v. City of Hutchison, 352 U. S. 112, 77 S. Ct. 200, 1 L. ed. (2d) 178; Mullane v. Central Hanover Bank & Trust Co. 339 U. S. 306, 70 S. Ct. 652, 94 L. ed. 865. See, also, Meadowbrook Manor, Inc. v. City of St. Louis Park, 258 Minn. 266, 104 N. W. (2d) 540; Wisconsin Elec. Power Co. v. City of Milwaukee, 272 Wis. 575, 76 N. W. (2d) 341, remanded per

---

[3] See, Etzler v. Mondale, 266 Minn. 353, 123 N. W. (2d) 603; Berkman v. Weckerling, 247 Minn. 277, 77 N. W. (2d) 291; 16A C. J. S., Constitutional Law, § 619(c), and particularly cases cited in note 73, p. 798; 4 Minn. Dig., Constitutional Law, Key No. 309; 16 Am. Jur. (2d) Constitutional Law, § 560.

curiam, 352 U. S. 948, 77 S. Ct. 324, 1 L. ed. (2d) 241; Wisconsin Elec. Power Co. v. City of Milwaukee, 275 Wis. 121, 123, 81 N. W. (2d) 298, 299."

We have been committed to these principles in registration proceedings since State ex rel. Douglas v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, decided in 1902. There, called upon to decide the constitutionality of the Torrens system of registering land titles, we said in response to the claim that the notice provisions of the act were constitutionally inadequate (85 Minn. 443, 89 N. W. 177):

"It is also contended by the relator that under the provisions of the act a person may be in actual possession of land the title to which is to be registered and service made upon him by publication, which may result in his being registered out of his title thereto without ever having any actual knowledge of the judicial proceeding instituted to secure a decree clearing and quieting a title as a basis for the initial registration. If this be the correct construction of the provisions of the act relating to the service of the summons, they do not constitute due process of law. Baker v. Kelley, 11 Minn. 358 (480). But the act is not reasonably susceptible of such a construction. The application for registration must be presented to the district court of the county in which the land is situate; hence such occupant is not a nonresident party, nor an unknown one. Having possession of the land, he has an apparent interest therein, and, if he is not the applicant, must be made a party defendant, and the summons served upon him as in civil actions. It is only on nonresidents and unknown persons or parties that service by publication may be made."

The following statement appears in 2 Patton, Titles (2 ed.) § 686:

"If a party in possession at the time of the commencement of the proceeding for initial registration was not brought under jurisdiction of the court by service of summons or appearance, his rights, if any, continue in spite of the failure of the decree and the certificate to mention them. Clearly in such a case he is not barred by the decree."

In addition to State ex rel. Douglas v. Westfall, *supra*, Patton cites in support of these statements Follette v. Pacific Light & Power Corp. 189

Cal. 193, 208 P. 295, 23 A. L. R. 965, and Sheaff v. Spindler, 339 Ill. 540, 171 N. E. 632. Other decisions which appear to be in accord include Chicago Title & Trust Co. v. Darley, 363 Ill. 197, 1 N. E. (2d) 846; Couey v. Talalah Estates Corp. 183 Ga. 442, 188 S. E. 822; and Kirk v. Mullen, 100 Ore. 563, 197 P. 300.[4]

■ If the Konantzes did not have title to the disputed strip at the time the decree of registration was entered, they were mere trespassers claiming adversely to the record owner. Minn. St. 508.02 provides:

"* * * No title to registered land in derogation of that of the registered owner shall be acquired by prescription or by adverse possession."

Once the land is registered, a stranger to the title cannot acquire an interest in it based upon his continued possession or use. Abrahamson v. Sundman, 174 Minn. 22, 218 N. W. 246. Addressing ourselves to a situation where a valid decree has registered the title to land in a certain party, we said in the Abrahamson case (174 Minn. 26, 218 N. W. 247):

"* * * From thence on that land and the title thereto can be affected, transferred or encumbered only under the provisions of the Torrens act."

■ From the evidence in the present record, it is clear that Mrs. Stein was aware when she purchased the registered property in April of 1962 that the Konantzes were in possession of the easterly 90 feet of it. They were apparently using it at the time as a part of a sheep pasture enclosed and bounded by a fence. Mr. Stein testified that he saw and inspected this fence before the purchase and acknowledged that it raised a question as to the location of the boundary line:

"Q. You looked at this fence, did you not?
"A. Yes, I looked at it.

---

[4] In a commentary on Minn. St. c. 508 appearing in 29 M. S. A. pp. 435, 451, the authors, R. G. Patton and Carroll G. Patton, state: "As to all defendants who are residents of the state, except any such listed in the order for summons, or in a later order, as of unknown address, the summons *must* be served the same as a summons in a civil action." (Italics supplied.)

"Q. Were you out there with Aff looking at it?

"A. Uh-huh.

"Q. When were you out with Aff looking at it?

"A. *Approximately 6 months before I bought the property.*

"Q. And Aff showed you the fence?

"A. He did.

"Q. And you could see the fence there on the ground?

"A. I saw the fence.

"Q. *And some question was raised at that time as to where Aff claimed the true line was?*

"A. That's right.

"Q. What was said by Aff at that time?

"A. He said the line laid over across the fence and would have to get a survey done.

\* \* \* \* \*

"Q. Did you go over and talk to Mr. Konantz about this fence?

"A. No.

"Q. Did you talk to Mrs. Konantz about the fence?

"A. No.

"Q. And they were only over there 2 or 300 yards?

"A. Something like that." (Italics supplied.)

In view of this testimony, Mrs. Stein must be charged with the knowledge, at and before the time of purchase, that the Konantzes were in possession of this land.[5] She did not have actual knowledge that their possession was based upon a title which originated in adverse possession or that this title was good as against the world. But, once she became aware that the land in dispute was in the actual possession of a person other than the prospective vendor, it became her duty to ascertain the nature and extent of the possessor's rights and, having failed to do so, she must be charged with the knowledge that the inquiry would have disclosed.

A prospective purchaser dealing with realty in possession of one

---

[5] At trial in the district court, the knowledge of Mr. Stein was apparently imputed to Mrs. Stein, the owner of record.

other than the vendor is bound to make inquiry of the occupant and to ascertain the nature and extent of the occupant's interest. Possession of realty by one other than the vendor is not only "prima facie evidence" of title in the possessor, but is also notice to a purchaser of whatever rights the possessor has which would be discoverable upon reasonable inquiry. Flowers v. Germann, 211 Minn. 412, 1 N. W. (2d) 424; Farmers State Bank v. Cunningham, 182 Minn. 244, 234 N. W. 320.

The possession of the Konantzes, it may be argued, gave no constructive notice to the Steins because the land had been registered when the purchase was made, and in such cases the doctrine of constructive notice is inapplicable. This would be true only if the interest of the Konantzes did not preexist the registration proceedings. In Abrahamson v. Sundman, 174 Minn. 22, 26, 218 N. W. 246, 247, the court said:

"Plaintiffs rely on Follette v. Pacific L. & P. Corp. 189 Cal. 193, 208 P. 295, 23 A. L. R. 965, and Riley v. Pearson, 120 Minn. 210, 139 N. W. 361, L. R. A. 1916D, 7; but it is to be noted that both cases relate to *occupants who, at the time the original registration was decreed, were not made parties thereto, and hence could attack the decree.* To such authorities may be added Gill v. Frances Inv. Co. (C. C. A.) 19 F. (2d) 880. But that is quite another question from the one here presented, where a conceded valid decree as to all the world has registered the title to land in a certain party. *From thence on* that land and the title thereto can be affected, transferred or encumbered only under the provisions of the Torrens act." [6] (Italics supplied.)

There are two sections of the Title Registration Act which specify time limitations for the assertion of rights in derogation of a decree of registration. Minn. St. 508.26 provides in part:

"Any person having any right, title, or interest in or lien upon the land upon whom the summons has not been actually served, and who had no notice or knowledge of the filing of the application or of the pendency of such proceeding prior to the entry of the decree therein, may at any time within 60 days after the entry of such decree, and not after-

---

[6] Note, also, In re Application of Juran, 178 Minn. 55, 226 N. W. 201, and the amendment to the Title Registration Act embodied in L. 1931, c. 357.

wards, file his duly verified petition setting forth such facts and praying for leave to file his answer therein."

This section of the statutes would be relevant if the Konantzes were now seeking to have the registration decree opened so as to permit them to interpose an answer to the application for registration. But they are not making such a request. It is their contention that as to them the registration decree was a nullity because, in the absence of actual service of summons upon them as persons in possession, the district court had no jurisdiction to transfer title to the 90-foot strip from them to Stein's predecessor in title.

Minn. St. 508.28 provides in part:

"No decree of registration hereafter entered, and no original certificate of title hereafter issued pursuant thereto, shall be adjudged invalid or set aside unless the action in which the validity of such decree, or of the original certificate of title issued pursuant thereto, is called in question, be commenced, or the defense alleging the invalidity thereof be interposed, within six months from the date of such decree. *No action or proceeding for the recovery of any right, title, interest, or estate in registered land adverse to the title established by any original decree of registration hereafter entered shall be maintained, unless such action is commenced within six months from the date of such original decree.*" (Italics supplied.)

The present action is one to recover possession of a part of a registered tract under a claim adverse to the title established by the decree of registration. It was not commenced within 6 months from the date of the original decree. Applying the language of § 508.28 literally, therefore, without consideration of the constitutional implications of doing so, would lead to the conclusion that this action by the Konantzes for ejectment and damages is barred by the statute.

Here again, however, the language of the statute must be applied in such a way as to avoid a result which offends constitutional principles. While it is well recognized that the legislature has power to limit the time within which a cause of action must be asserted in the courts, it has no power to compel an owner in possession of real estate to anticipate a dis-

pute concerning his title and either institute legal proceedings to prove his ownership or suffer the loss of his title.[7] The distinction is that which exists between (a) limiting the time within which a person can suffer an invasion of his legal rights by another without protesting and (b) limiting the time within which a person must assert in the courts a right which has not been violated. An owner deprived of possession can be required to seek his legal remedy promptly or not at all. An owner whose possession has not been contested to his knowledge cannot reasonably be expected to bring suit against parties unknown to protect his property from adverse claims of which he is unaware. It is this distinction which underlies the decisions of our court in such cases as Baker v. Kelley, 11 Minn. 358 (480), and State ex rel. Douglas v. Westfall, *supra*. In the latter case we said with respect to the limitation provision of the registration act then in force (85 Minn. 445, 89 N. W. 178):

"* * * It is urged in this connection that the legislature cannot require a person in the unchallenged possession of land to commence an action or institute any proceeding within a limited time to vindicate his claim, or be barred of all rights in the premises. This is true. * * *

"However this may be, it is reasonably clear, and we so hold, that the particular provision of the act, which, in effect, forbids the commencement or the defense, in opposition to the decree, of any action or proceeding to recover the land brought more than sixty days after the entry of the decree, does not apply to an adverse claimant in the actual possession of the land, upon whom the summons is not served; for, being in possession, he cannot bring such an action, and his right to defend his possession and title in such a case cannot be made to depend upon his nonaction. So construed, the provision of the act both as to the opening of the decree and as to the commencement of any action or proceeding to recover the land in opposition to the decree is valid as a statute of limitations."

It has been suggested that Douglas should be overruled because the decision appears to be based on the ground that an adverse possessor

---

[7] 34 Am. Jur., Limitation of Actions, § 20.

had no cause of action in 1902 (when that opinion was written) which could be asserted against a party claiming adversely to him; since then, by virtue of an amendment adopted in 1939, Minn. St. 508.03(7), a party claiming title by adverse possession can register his title if he elects to do so. We are not prepared to accept this recommendation for at least two reasons: Although a person claiming title to realty by adverse possession in 1902 could not institute registration proceedings, he could have brought an action to determine adverse claims (Minn. St. c. 559), which would have served a comparable purpose. Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060. It was not the lack of a legal remedy usable by the adverse possessor which prompted the court in the Douglas case to except an owner in possession from the limitation provisions of the act. Rather, it was adherence to this principle to be derived from the decisions of this and other courts:

"* * * Limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims." [8]

We have held that the legislature may compel the recording of a claim of title by a person not in possession within a time limited by statute even though the claim was one discoverable by examining ancient documents previously recorded. Wichelman v. Messner, 250 Minn. 88, 83 N. W. (2d) 800, 71 A. L. R. (2d) 816. But the burden of making a current record of a claim in the office of the register of deeds, as required by our Marketable Title Act, is slight compared to that of prosecuting an action in district court to establish title to real estate. Further, the necessity of requiring a current notice of intent to assert an ancient claim of record by a person *not in possession*, in order to relieve real estate titles from obscure burdens, is easier to perceive than is the urgency of making a registration decree good as against a title holder *in possession* upon whom process could have been served but was not. In this connection it is important to note that § 508.06(11) provides that when it is desired to fix the boundary line to be registered, the application should identify the owners of affected adjoining lands. No attempt

---

[8] 2 Cooley, Constitutional Limitations (8 ed.) p. 763, and see cases cited under note 1, p. 764; Annotation, 7 A. L. R. (2d) 1366; 11 Minn. Dig., Limitation of Actions, Key No. 4 (2).

was made to do so in the registration proceedings here involved. This being so, the provision of § 508.06(11) stating that in such event "the decree shall not have the effect to fix or determine the boundary lines" becomes pertinent.

■ From what has been said, it follows that the resolution of the case depends now on whether the Konantzes had acquired title to the strip by the time the registration decree was entered. If they had, they were entitled to notice and opportunity to be heard, and the decree did not extinguish their title. If they had not, they were and remain still trespassers. The findings and conclusions of the trial court do not provide us with an answer to this problem. There is a finding that the Konantzes admittedly fenced, pastured, and were in adverse possession of the 90-foot strip for more than 15 years prior to September 6, 1960. But this is not sufficient. Title by adverse possession is acquired only if the one claiming it establishes clearly and unequivocally an adverse possession for the requisite period which is "actual, open, continuous, hostile, exclusive and accompanied by an intention to claim adversely." [9] The finding as made is incomplete and could not support as a conclusion of law the existence of title in the Konantzes at the time the registration proceedings were commenced. In any event, no such conclusion was made by the trial court. Apart from these considerations of form, the evidence disclosed by the record pertaining to the nature and quality of the adverse possession of the Konantzes with respect to the land in contest is, we feel, too vague and indefinite for a finding of the factual elements necessary for the acquisition of title by adverse possession. There are no findings and conclusions whatever supportive of acquisition of title by the Konantzes based on the "practical location" of a disputed boundary line.[10]

---

[9] Sherin v. Brackett, 36 Minn. 152, 154, 30 N. W. 551, 552; Dean v. Goddard, *supra*; Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588; Johnson v. Raddohl, 226 Minn. 343, 32 N. W. (2d) 860; Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553; Gifford v. Vore, 245 Minn. 432, 72 N. W. (2d) 625.

[10] See, Engquist v. Wirtjes, 243 Minn. 502, 68 N. W. (2d) 412; Simms v. Fagan, 216 Minn. 283, 12 N. W. (2d) 783.

After the action was started, Mrs. Stein cross-claimed against the treasurer of Dakota County, alleging negligence on the part of the county examiner of titles. The decision of the trial court relieved the county treasurer of liability, and this determination is assigned as error on the appeal. Although we do not see from the present record how liability can be imposed on this defendant, we believe that the interests of justice will be served if the claims of Mrs. Stein against him are considered again in conjunction with a new trial.

In exercise of the authority given this court by § 607.01, neither party is allowed costs and disbursements.

The judgment of the district court is reversed and a new trial granted on all issues.

Reversed.