GILES GILBERT *vs.* MARY F. EMERSON *et al.*

Submitted on briefs Oct. 20, 1893.   Reversed Nov. 13, 1893.

No. 8536.

The outermost lots in a townplat of shore and bordering shallows, take the riparian incidents.

R., being the owner of the land fronting on the waters of the bay of Duluth known as "Rice's Point," platted it into blocks and streets, extending the plat a distance of several blocks beyond the actual shore line, out into the shallow water, but not out to the line of navigability. He then conveyed, according to the plat, the original shore block to A., and all the water blocks in front of it to B. *Held*, (1) that A.'s rights were limited to the lines of the original shore block as indicated on the plat, and that he acquired no appurtenant riparian rights in the unplatted space between the outermost platted blocks and the line of navigability; (2) that the plat, on its face, showed an intention that the outer-

most platted blocks should be deemed the shore blocks, with all the riparian rights in the water, and land under the water, in front of them, usually incident to a riparian estate; and that, after conveying these blocks, R. had no proprietary interest in the unplatted space in front of them.

Appeal by plaintiff, Giles Gilbert, from a judgment of the District Court of St. Louis County, *Charles L. Lewis,* J., rendered September 19, 1893, decreeing that plaintiff is not, and that defendant George C. Howe is, the owner of the unplatted submerged land in controversy.

Appeal also by defendants, Mary F. Emerson and Charles H. Eldridge, from the same judgment decreeing that they have no title, estate or interest in the same unplatted submerged land.

Plaintiffs brought this action under 1878 G. S. ch. 75, § 2, to determine the adverse claims of defendants, Mary F. Emerson, Charles H. Eldridge, George C. Howe and others, in and to the unplatted submerged land lying in front of his block No. 159 of Rice's Point and between the block and the dock line which was established in 1887, some distance out in Duluth Bay in front of it.

Defendant Howe answered that Orrin W. Rice received a patent from the United States for all the land on Rice's Point, a peninsula lying between the Bay of Duluth on the east and St. Louis Bay on the west. That on December 31, 1858, Rice platted the dry land and the submerged land on the east covered by shallow water, into blocks and streets. That through several mesne conveyances the plaintiff had become the owner of block No. 159, the outermost block on Rice's plat, and lying wholly in the shallow water of the Bay of Duluth. That Block No. 85 was partly in the shallow water and partly on the dry land and embraced the natural shore line. That this block No. 85 was sold by Rice and through several mesne conveyances became the property of the defendants Emerson and Eldridge as tenants in common. That afterwards Rice died intestate and this defendant Howe has since acquired from his heirs all the title, right and interest which Rice had at his death in and to the unplatted land covered by shallow water lying in front of plaintiff's block No. 159, and between it and the dock line established in 1887. A copy of the map of Duluth showing the platting, dock lines and natural shore, was attached to the answer.

Defendants Mary F. Emerson and Charles H. Eldridge also answered stating the same facts. They claimed to own this unplatted submerged land in question by virtue of their ownership of block No. 85 embracing the natural shore, notwithstanding the intervening Block No. 159 belonged to the plaintiff. The other defendants made no claim. On receiving these answers the plaintiff without replying moved the Court, August 28, 1893, on notice, for judgment on the pleadings. The trial Court held that on the facts stated in the answer defendant Howe owned this unplatted submerged land and judgment was entered accordingly. Plaintiff and the defendants Emerson and Eldridge severally appeal. Both appeals were argued together in this Court.

*Billson & Congdon,* for appellant Gilbert.

The right to this unplatted space in front of his block is claimed by the plaintiff by virtue of his ownership of the outermost of the platted blocks. The defendants, Emerson and Eldridge claim the right to it as still incident to their ownership of the block which was originally, at this point, the shore of the bay; their theory being that the riparian rights originally incident to their block were curtailed by the plat, only as to the area covered by the platted blocks, thus leaving still incident to their original shore block any residuum of unplatted space lying inside the dock line. The claim of the defendant, George C. Howe, is based upon his deed from the heirs of Orrin W. Rice, and rests upon the theory that where a riparian owner plats his land and extends his plat out into the adjacent shallow waters, he still retains, after selling all his platted lots and blocks, the right to improve and occupy, as against any or all of his grantees, any space which may lie beyond the boundaries of his plat and within any dock line that may be subsequently established by public authority.

Had it been expressly recited upon the face of the plat that the outside row of platted blocks should be regarded as the shore of the bay; or that all platted blocks should be deemed already filled in and regarded as dry land as ultimately contemplated by the plat; or that the outside blocks should always have direct contact with and access to the waters of the bay, which by the plat they were shown to enjoy; or that such blocks in analogy to the general rule

respecting premises apparently abutting upon a highway of any kind should carry with them the interests of the vendor in the adjacent highway; or that as against his grantees of such blocks, Rice, the maker of the plat, waived or estopped himself from claiming rights of occupancy beyond them, or from denying that such blocks had, as by reference to the plat they appeared to have, direct access to the navigable waters in front of them; the rights of the plaintiff would have been too clear to admit of doubt.

If on the contrary it had been similarly recited that the right of occupancy in any space between the plat and the point of navigability should remain in Rice, or that such residuary right should remain and pass as incident to the original shore block, the right of Howe in the one case, and of the remaining defendants in the other, would have been equally clear. In the absence of any of these express stipulations, it remains for the Court to say which, if any of them, is fairly implied from the character of the plat and all the circumstances of the transaction.

The sole function of the Court is to determine which of these several possible meanings of the plat it is fair to presume was present in the minds of the parties. The question is therefore one of construction of contract, particularly with reference to the reasonable implications from the plat. The question is pre-eminently a practical one for it concerns solely the mental operations of practical men engaged in a business transaction. If by the application of any technical rules or artificial reasoning, the Court should be so unfortunate as to charge the transaction with a result the opposite of that which under all the circumstances was naturally contemplated by the parties, it would be an apparently unnecessary injustice.

The plat fairly implies that the outermost platted blocks should permanently enjoy direct access to the water and all parties buying or selling lots by reference to the plat should be presumed to have acted upon that understanding. *Watson* v. *Peters*, 26 Mich. 508; *Richardson* v. *Prentiss*, 48 Mich. 88; *Goodsell* v. *Lawson*, 42 Md. 349; *Mariner* v. *Schulte*, 13 Wis. 775.

The defendants who own the original riparian block have no claim upon the unplatted space in controversy. The case of *Gilbert* v. *Eldridge*, 47 Minn. 210, would seem to substantiate this proposition.

*Edward Fuller*, for appellants Emerson and Eldridge.

*Wm. B. Phelps,* for respondent Howe.

Under the decisions of this Court submerged land in the Bay of Duluth has the same characteristics as the upland, subject however to the public right of navigation, and is governed by the same general rules of law as other realty. *Gilbert* v. *Eldridge,* 47 Minn. 210; *Bradshaw* v. *Duluth Imp. Mill Co.,* 52 Minn. 59.

It is conceded that Rice became the owner of this submerged area about the land by him entered. It was and is covered by shallow water and is within the present dock lines legally established. Riparian rights belong and are incident to the abutting shore. *Lake Superior Land Co.* v. *Emerson,* 38 Minn. 406; *Hanford* v. *St. Paul & D. R. Co.,* 43 Minn. 105.

No one purchasing a shore block such as Block 85 would understand that his rights extended beyond the middle of the streets surrounding this block. The unplatted space claimed by the parties to this action could not be appurtenant or incident to a shore block from which it is separated by a number of intervening blocks and streets. The intention to cut off riparian rights from the original shore is evident from platting the submerged area in front of the shore. Emerson and Eldridge have no interest or title whatever, in or to, this unplatted space because of their ownership of Block 85.

When Rice received his patent from the general government the space covered by Block 159 or his rights over this space came to him as incident and appurtenant to his title to the shore. The Court is now asked to hold that the rights over this unplatted space which were originally incident and appurtenant to the shore, have since attached to Block 159, which was itself an incident and appurtenant of the shore. Plaintiff has not cited any authority for this claim, or any in which it has been held that an incident attaches to an incident. On the contrary, the authorities are to the effect that an incident can never attach to an incident. A shadow must have its substance and we will look in vain for the shadow of a shadow. Rice owned the unplatted space in question. He had a right to plat, use or convey it as he saw fit, and Howe succeeded to all of Rice's rights. In *Gilbert* v. *Eldridge,* 47 Minn. 210, it was held, that to a tract of land having a navigable body of water as one of its boundaries, riparian privileges attached; but if such tract were bounded by

right lines not coincident with the shore, such lines would be regarded as excluding such privileges. In the case of the *City of Duluth* v. *St. Paul & D. R. Co.*, 49 Minn. 201, this same rule of construction was followed. Following the doctrine of these cases, the plaintiff's rights do not extend beyond the limits of his water block. The fact that the space beyond Block 159 was unplatted could not be construed as evidencing an intention to bestow it upon the owner of that block. Rice had the right to treat this property as he saw fit. No law required him to plat it all at one time.

The Court below found that the unplatted space was cut off and disassociated from the shore by the platting and ceased to be incident and appurtenant thereto, and did not thereby become incident or appurtenant to the adjacent platted area and that defendant Howe is the sole and absolute owner of these rights.

MITCHELL, J. This is another of the familiar series of controversies over titles and riparian rights, growing out of the fact that Orrin W. Rice, the original owner of a peninsula fronting on the waters of the bay of Duluth, known as "Rice's Point," in platting his land into lots, blocks, and streets, extended the plat for a distance of several blocks beyond the shore line out into the shallow water. *Gilbert* v. *Eldridge*, 47 Minn. 210, (49 N. W. Rep. 679;) *Bradshaw* v. *Duluth Imp. Mill Co.*, 52 Minn. 59, (53 N. W. Rep. 1066.)

Rice did not, however, plat out to the line of navigability, and hence an unplatted space was left between the outermost blocks and the navigable waters. It is this unplatted space which is the subject of the present controversy.

After platting the land, Rice conveyed the original shore block (85) to the grantors of defendants Emerson and Eldridge, and conveyed to the grantors of plaintiff all the water blocks in front of block 85, including those fronting on the unplatted space referred to. Years afterwards, Rice's heirs conveyed the unplatted space to the defendant Howe.

Plaintiff claims the right to occupy this unplatted space by virtue of his ownership of the outermost blocks fronting on it; his contention being that the plat clearly shows on its face that it was intended that these blocks should permanently enjoy access to the water,—in short, that they should be the "shore blocks,"—and that,

as such, the riparian rights usually appurtenant to the shore land should attach to them.

Defendants Emerson and Eldridge claim the right to the unplatted space as appurtenant to their ownership of the original shore block; their theory being that the riparian rights originally incident to the shore land were curtailed by the plat only as to the land covered by the platted blocks, thus leaving still incident to the original shore block the unplatted space out to the point of navigability.

Defendant Howe bases his claim upon the deed from Rice's heirs, upon the theory that, where a riparian owner extends the plat of his land out into the adjacent shallow water, he still retains, after selling all his platted water blocks, the right to improve, as against his grantees, all that lies beyond the boundaries of the plat out to the line of navigability.

It is the settled doctrine of this court that the right of the riparian proprietor upon navigable waters to reclaim, improve, and occupy submerged lands out to the line of navigability may be separated from the shore land, and transferred to and enjoyed by persons having no interest in the original shore. We have also held, with reference to this very property, that platting the land into separate and distinct parcels or blocks, out into the shallow water beyond, in front of the shore block, clearly indicated an intention to disassociate the two, and hence that the grantee of the shore block would acquire no interest in the water blocks in front of it. This is conclusive against the claim of defendants Emerson and Eldridge, for if the platting in that way indicated an intention that the grantee of the original shore block should have no right in the water, or the land under the water, included in the platted blocks in front of it, it with equal or even greater force negatived any intention that he should have any rights in the water, or land under it, outside of the intervening platted blocks, which he could not, under the circumstances, use as incident to the original shore block. In brief, the intention is clearly indicated that the rights of the grantee of that block were to be limited by the boundary lines as indicated on the plat.

We have never before had occasion to directly pass upon the exact question at issue between plaintiff and defendant Howe; but we

think that an application of the principles announced in our former decisions necessarily leads to its determination in favor of the contention of the plaintiff.

The principle on which all our decisions on the subject have proceeded is that the question is one of intention, as indicated by the plat, with reference to which all the conveyances were made. This plat, as we think, clearly implies that the outermost platted blocks should be and remain the riparian or shore blocks, and, as such, have all the riparian rights in and to the water, and the land under the water, in front of them, which any riparian or shore estate has. This would be the impression which would be inevitably produced on the mind upon a mere inspection of the plat.

Where a party conveys a parcel of land bounded by water, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed. The intention to do so must clearly appear from the conveyance; and the mere fact that the boundary of the lot conveyed is indicated by a line on the plat will not limit the grant to the lines on the plat, or operate to reserve to the grantor proprietary rights in front of the lot. *Watson* v. *Peters*, 26 Mich. 508. Had the blocks conveyed to plaintiff been original shore blocks, (with no block platted out in the water in front of them,) or had Rice, before conveying these outermost water blocks, reclaimed and filled them up, there could have been no question but that the grantees would have acquired all the riparian rights in the water, and land under water in front of them, usually appurtenant to shore land.

But the platting of these water blocks, and conveying them with reference to the plat, manifestly contemplated reclaiming them and filling them in, or otherwise improving them for use; and we cannot see what difference it makes whether this had been done before Rice conveyed, or was only in contemplation. It seems to us that the plat contemplates upon its face, as clearly as words could express it, that the exterior line of these outermost blocks was to be treated as the shore line, and that the rights usually appurtenant to a riparian estate would attach to those blocks. All the supposed legal objections to this view are more speculative and specious than practical or sound.

On the appeal of defendants Emerson and Eldridge, that part of the judgment appealed from is affirmed, and on the appeal of plaintiff that part of the judgment appealed from is reversed, and the cause remanded, with directions to the court below to render judgment in favor of plaintiff.

(Opinion published 56 N. W. Rep. 818.)