**Mildred A. MARSH, et al., Appellants,**

v.

**Ralph G. CARLSON, et al., Respondents,**

**Anna D. Hausner, Defendant.**

**No. C5–85–2300.**

Court of Appeals of Minnesota.

July 29, 1986.

Bruce F. Alderman, Alderman Law Office, Ltd., Brainerd, for appellants.

Thomas R. Borden, Borden, Steinbauer, Rathke & Krueger, Brainerd, for respondents.

Considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal from an amended judgment entered in a declaratory judgment action to determine conflicting claims to registered lakeshore property. We affirm.

## FACTS

This action involves title to shoreland property on Whitefish Lake. Both parties claim title through separate land registration proceedings brought by one A.C. Kavli and covering neighboring subdivisions. Appellants Marsh and Turner own lots in Manhattan Beach subdivision, originally platted and registered in 1927. Respondents Ulstad and Carlson have purchased what is presently a peninsula, registered in 1949 and attached to the Marsh and Turner property by a low-lying wetlands area. They have begun to develop this land and to construct a road access.

The parties' predecessor, A.C. Kavli, owned Government Lot 5 and part of Government Lot 6 located on the northeastern shore of Whitefish Lake. This property is shown on the original land office survey as a continuous strip of land dividing Whitefish Lake from a separate body of water, later named Island Lake.

In 1886, the U.S. government constructed a dam in Cross Lake that regulates the water level in a chain of lakes including Whitefish Lake. Since the construction of the dam, respondents' expert testified, the elevation of the lake has remained relatively constant. The most recent survey map shows the land in question forming a peninsula distinguishing, but not completely dividing, Whitefish Lake from Island Lake.

A.C. Kavli and defendant Anna Hausner platted the subdivision of Manhattan Beach, which was a replat of Twin Beach,

in 1926. This subdivision included the north 400 feet of Government Lot 5. Appellant Marsh owns Lot 9 and appellants Turner Lot 6 and one-half of Lot 7 of Block 22 of this subdivision. This land was platted as follows:

As represented above, appellants' land (marked by X's) was shown to be lakefront property. The plat shows the high water mark forming the southern boundary of appellants' lots, although it refers to "Land Subject to Flowage," indicating land subject to the flowage easement in the U.S. government by reason of the Cross Lake dam. The plat also indicates by dotted line the land subject to overflowage and the line demarcating the north 400 feet of Government Lot 5.

At the time this plat was filed, Anna Hausner had title to the remainder of Government Lot 5. In 1927, she conveyed this remaining portion to Edward L. Kavli, who conveyed it to A.C. Kavli in 1948.

The Manhattan Beach plat was registered in 1927. Kavli sold Lot 9 to Marsh's predecessor in 1932, and Lot 6 and one-half of Lot 7 to the Turners' predecessor in 1954. The Turners' warranty deed reserved to Kavli

all riparian rights to the above described property, and the party of the first part does not convey by this deed more land

than the footage shown on the recorded plat.

In 1949, Kavli registered title to the rest of Government Lot 5 and part of Government Lot 6. No notice of this registration was given to appellant Marsh's predecessor, because Kavli did not seek to fix the boundaries of his property in the registration proceeding. *See* Minn.Stat. § 508.-06(10) (1984).

Appellant Marsh acquired her interest in 1969. Appellants Turner acquired their interest in Lots 6 and 7 in 1976.

In 1983, Kavli sold the property registered in 1949 to respondents Carlson and Ulstad. They then platted the property as White Island Beach. Respondents have subdivided the "island" portion of the property and begun construction. They have surveyed and graded a road from the Manhattan Beach subdivision over the low-lying area to their White Island Beach subdivision.

This action was begun in June of 1984 after appellants noticed the beginning of surveying activities, protested and asserted

their claim of ownership, and opposed approval of the plat before the city council.

Appellants presented the testimony of Dorothy Anderson concerning the use of Lot 9 down to the lakeshore since 1937. She stated that the family used the beach regularly during the summer months, but constructed no buildings on the shore, although other Manhattan Beach lot owners had done so. Appellants presented photographs showing use of the beach, mostly occurring after 1949.

The trial court concluded that the 1949 Torrens proceedings were valid, that appellants had not established the elements of adverse possession prior to 1949, and that the 1927 registration of Manhattan Beach did not give them riparian rights to the disputed lakeshore. The court dismissed respondents' counterclaim for monetary damages.

### ISSUES

1. Did the trial court err in ruling that title to respondents' property was properly registered in the 1949 Torrens proceeding?

2. Did the court err in fixing the boundary to appellants Turners' property?

3. Did the court err in fixing the boundary to appellant Marsh's property?

### ANALYSIS

*1. Validity and effect of 1949 registration*

In 1949, Kavli applied to register

### PARCEL 1

All that part of Government Lot 5, Section 6, * * * except the north 400 feet thereof.

(Subject to easement for
flowage * * * *)

Appellant Marsh's predecessor received no notice of the Torrens proceeding. Appellants concede that the Turners cannot challenge the 1949 Torrens proceeding because their predecessor was Kavli, the one who registered title.

■ In registering title to land, an applicant must set forth

The names of all persons or parties * * * who appear of record, or who are known to the applicant to have or to claim any right, title, estate, lien, or interest in the land * * * *.

Minn.Stat. § 508.06(5) (1984). The applicant is not required to list adjoining owners unless he seeks to fix boundary lines in the proceeding, *see id.* § 508.06(10), which Kavli did not do in the 1949 proceeding.

■ The supreme court has held that persons adversely possessing land subject to registration need not be notified of the registration proceedings unless their claim has ripened into title. *Konantz v. Stein,* 283 Minn. 33, 36, 167 N.W.2d 1, 4 (1969). The court in *Konantz* noted that once title to land has been registered, no interest to it can be acquired by adverse possession. *Id.* at 41, 167 N.W.2d at 7; Minn.Stat. § 508.02 (1984).

*Konantz* involved a claim by an adjoining owner to a 90–foot strip of land on the edge of the land to which title was to be registered. The court, however, did not treat the registration proceeding as one to fix boundaries, in which adjoining owners should have received notice.

Appellant Marsh failed to establish that title was acquired by adverse possession prior to the registration proceeding. Appellant showed only occasional use of the beach for bathing, interrupted for two years during World War II, and without structural improvement. Even if adequate, *see Laabs v. Bolger,* 25 Wis.2d 17, 130 N.W.2d 270 (1964) (use required for seasonal property), this evidence of adverse possession beginning in 1937 fell short of the statutory period. *See* Minn.Stat. § 541.02 (1984) (15 years).

Thus the validity of the 1949 Torrens proceeding depends on the effect of the 1927 registration of the Manhattan Beach plat. If that plat gave appellant Marsh's predecessor riparian rights to accretions, it precluded Kavli from later registering title to such accretions, regardless of whether Kavli should have given notice to Marsh's predecessor in 1949.

### 2. The boundary of the Turners' property

The Turners own Lot 6 and the easterly one-half of Lot 7, block 22, of the Manhattan Beach subdivision. The court determined that the Turners had no interest in the disputed property because the riparian rights to Lot 6 and one-half of 7 had been reserved in the 1954 deed, and because Kavli owned the property in 1949, thus foreclosing any challenge to the Torrens proceeding.

■ Appellants Turner argue that their title is not subject to the reservation of riparian rights because it does not appear on their warranty deed nor on their vendor's certificate of title. Omission of the reservation from the warranty deed, however, could not give the Turners a greater title than their grantors. *Cf. Knudson v. Trebesch,* 152 Minn. 6, 187 N.W. 613 (1922) (a reservation of a right-of-way is an apparent cloud upon the title justifying refusal of performance).

### 3. The boundary of Marsh's property

Appellant Marsh, owner of Lot 9, claims to own to the lakeshore by operation of the 1927 registration as well as by adverse possession. The trial court determined that appellant has title to only that part of the accreted land that lies within the north 400 feet of Government Lot 5.

The boundaries of land conveyed with reference to a subdivision plat are as a general rule limited to those designated by the plat. *Owsley v. Johnson,* 95 Minn. 168, 171, 103 N.W. 903, 904 (1905). If the plat is ambiguous or uncertain, the court will look to the intent of the parties. *Id.* The trial court determined that the plattors of Manhattan Beach in 1926 did not intend to include riparian rights to any land outside the north 400 feet of Government Lot 5.

The plat of Manhattan Beach includes the following pertinent notations or descriptions:

1) Distance measurements for the depth of the lots down to the "high water mark";

2) A line showing the "high water mark" abutting the lots;

3) The notation "Land Subject to Flowage" appearing beyond the "high water mark" and a dotted line defining this "land";

4) a legal description confining the plat to the north 400 feet of Government Lot 5, and a dotted line representing this boundary.

■ The trial court correctly determined that the length of the lot lines was not controlling. *See Nicolin v. Schneiderhan,* 37 Minn. 63, 64, 33 N.W. 33, 33 (1887) (the representation on a plat that a lot borders a stream or lake governs over distance measurements).

Although the lot lines were extended to the "high water mark" as represented on the plat, this representation was belied by the notation of the flowage easement just beyond appellants' land. Such an easement does not imply that the land is in fact submerged, or that the government has fee title to it; it extends only a right to overflow the land without compensation and prevents uses of the land inconsistent with this right. *See* Minn.Stat. ch. 110; *State v. Fischer,* 245 Minn. 1, 6, 71 N.W.2d 161, 165 (1955) (abutting landowners tilled land which was claimed to be subject to a flowage easement).

The trial court correctly concluded that the clearest evidence of intent was the limitation of the plat to the north 400 feet of the government lot. The supreme court has stated:

Where a party conveys a parcel of land bounded by water, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed. The intention to do so must clearly appear from the conveyance; and the mere fact that the boundary of the lot conveyed is indicated by a line on the plat will not limit the grant to the lines on the plat, or operate to reserve to the grantor proprietary rights in front of the lot.

*Gilbert v. Emerson,* 55 Minn. 254, 261, 56 N.W. 818, 819–20 (1893). In *Gilbert,* the plattor platted and conveyed "water blocks," or submerged lands; his heirs afterwards sought to convey the remaining

**902**

submerged land out to the point of navigability. The court held that the plat indicated an intention to convey riparian rights to the outermost "water blocks" and to retain no interest in the unplatted space beyond them.

Here the intent to retain rights to the land beyond the north 400 feet of Government Lot 5 clearly appears. Unlike *Gilbert*, the plat did not unambiguously show the land beyond the platted lots to be submerged; moreover, it is undisputed that at least the tip of the present peninsula was not submerged. Finally, there is evidence from which the trial court could have concluded that the disputed land has not in fact been under water for a century.

Considering all of the circumstances, the plattors of Manhattan Beach in 1926 plainly intended to convey no rights to land beyond the north 400 feet of Government Lot 5. Anna Hausner, one of the plattors, owned the remainder of Lot 5 and subsequently conveyed it to another. As the trial court noted, the plat notations were sufficient to put any purchasers on notice of this limitation.

■ The trial court's determination of a boundary is a fact issue, to be accorded the same deference as any other factual determination. *Allred v. Reed*, 362 N.W.2d 374, 376 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. April 18, 1985). The trial court did not clearly err in determining that the 1926 plat did not convey riparian rights beyond the north 400 feet of Government Lot 5.

### DECISION

The trial court did not err in finding respondents' land properly registered nor in fixing the boundaries to appellants' land.

Affirmed.