Rand CLAUSSEN, et al., Respondents,

v.

**CITY OF LAUDERDALE,
Minnesota, Appellant,**

Dennis Dolphin, et al., Defendants.

No. A03–1983.

Court of Appeals of Minnesota.

July 6, 2004.

Jeffrey C. Thompson, Howse & Thompson, PA, Plymouth, MN, for respondents.

Robert A. Alsop, John M. LeFevre, Jr., Kennedy & Graven, Chartered, Minneapolis, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge; STONEBURNER, Judge; and PARKER, Judge.

## OPINION

PARKER, Judge.*

Respondents, Rand and Barbara Claussen and Edward and Marilyn Salovich, brought this action against appellant, the City of Lauderdale (the city), and others, seeking title to certain property owned by the city and used as a park. Respondents eventually amended their complaint to seek adverse possession over part of the property.

In November 2001, the parties reached a tentative settlement in which the city agreed to grant respondents a use easement over the disputed property as long as ownership remained in respondents' respective families. The settlement was conditioned upon approval from the administrator of a federal grant that the city had received to purchase the property and use it as a park; the settlement fell through and was vacated when that approval was not obtained.

The city thereafter moved for summary judgment. The district court agreed with the city's argument that respondents cannot adversely possess property that has been owned since 1951 either by the city or its predecessor, a local school district. The district court further agreed that respondents failed to produce admissible, clear and convincing evidence to establish adverse possession of the property prior to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

1951. The court therefore granted summary judgment to the city on respondents' adverse possession claim.[1]

The district court continued, however, and concluded that "[e]quity ... demands a resolution of the property that all the parties thought they were fighting over, namely the 7–8 foot strip of land between the historical fence line (or rise) and the actual registered property line." Without findings or analysis, the court granted respondents an exclusive use easement that "will run with [respondents'] parcels, ... as long as [they] are used for residential purposes by [respondents] or their heirs or successors in interest."

On appeal, the city challenges that part of the district court's order granting an exclusive use easement to respondents. The city argues that the district court acted improperly by granting, sua sponte, equitable relief not specifically pled or requested by respondents. The city further argues that because respondents failed to produce admissible, clear and convincing evidence to establish their adverse possession claim, they necessarily failed to produce sufficient evidence to support the grant of an exclusive easement.

Because the district court abused discretion by granting, sua sponte, respondents equitable relief in the form of an exclusive use easement over property that has been publicly owned since 1951, we reverse and vacate paragraph 5 of the court's order.[2]

## FACTS

Respondents are neighbors and own adjoining residential property located in the city at 2345 Summer Street (Claussen property) and 2337 Summer Street (Salovich property). The city owns property that borders respondents' properties on the north (City Parcel 2) and the Salovich property on the east (City Parcel 1).

The city parcels have been publicly owned since 1951, when they were purchased by a local school district from Earl and Lorraine DesLauriers (City Parcel 1), and from Harry and Lulu Baker (City Parcel 2). In 1956, the city leased the parcels from the school district and began to use the parcels as a park.

■ In 1966, the school district registered the parcels as Torrens property. Because the school district did not seek to fix boundaries, it did not give notice to any of the adjoining property owners.[3]

1. The district court requested that the parties address the issue of practical location of boundaries as a possible way to deal with the dispute. In granting summary judgment to the city, the district court also rejected any entitlement to relief under the theory of practical location of boundary.

2. Paragraph 5 of the district court's order states: "The Examiner of Title is ordered to ·enter a use easement to the property defined in Paragraph 4 in favor of the plaintiffs in accord with the Court's Memorandum and have a competent surveyor hired by the City place judicial landmarks setting [forth] the limits of this use easement."

3. Where a property owner does not seek to fix boundaries, adjoining property owners need not be given notice of the registration proceedings. See Minn.Stat. § 508.06(11) (2002) (providing that application for registration shall contain names and addresses of all owners of adjoining lands "if it is desired to fix and establish the boundary lines of the land"); Marsh v. Carlson, 390 N.W.2d 897, 900 (Minn.App.1986) (holding that adjoining landowners need not be notified where Torrens proceeding did not seek to fix boundaries). Respondents imply that had their predecessors in title received notice of the Torrens proceedings in 1966, it would have been easier for them to establish their entitlement to an easement at that time. Respondents' suggestion that they have been prejudiced by this lack of notice in 1966 is speculation and irrelevant to the issue presented here.

In 1977, the city installed a fence along the southern border of City Parcel 2 and along the western border of City Parcel 1. At the city council meeting in May 1977, the council considered conducting a survey to determine the exact boundary lines for purposes of placing the fence, but was advised by the city attorney that a survey was not necessary because adjoining property owners could not obtain title by adverse possession of property owned by either a school district or city.

■ The city purchased the parcels in 1985 from the school district with the assistance of a grant from the federal government. Under the terms of the grant, the city is required to maintain public ownership and recreational use of the parcels.[4]

In 1986, the Saloviches purchased their property from Jerry and Judith Hess. The Salovich parcel is bordered on the north by City Parcel 2, on the east by City Parcel 1, and on the west by the Claussen parcel. The Claussens have owned their property, which lies directly south of City Parcel 2, since 1990 when they purchased it from Curtis and Julianne Sparks.

During the summer of 2000, the city removed the fence along the southern boundary of City Parcel 2 in order to install new utilities in the park. The city also planned to construct a bituminous path on City Parcel 1, along the eastern boundary of the Salovich parcel, to run between Summer Street on the south and an existing path in City Parcel 2 to the north.

Respondents commenced this action and eventually narrowed their claim for adverse possession to the strip of land running between the old city fence and the actual property line and a small triangular piece of land running along the eastern edge of the Salovich parcel, between the city fence and the property line.

## ISSUE

Did the district court err or otherwise abuse discretion by a sua sponte grant to respondents of equitable relief in the form of an exclusive use easement over property that has been publicly owned since 1951?

## ANALYSIS

The city argues that the district court abused discretion because the relief granted was never specifically requested or pled by respondents and because, even if pled or requested, the evidence fails to support granting such relief. Respondents have not filed a notice of review and cannot now challenge the district court's grant of summary judgment to the city on their adverse possession claim. *See* Minn. R. Civ.App. P. 106 (stating respondent may obtain review by filing a notice of review); *Arndt v. Am. Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn.1986) (stating that rule 106 bars respondents from presenting issues not raised by notice of review); *Olson v. Lyrek*, 582 N.W.2d 582, 584 n. 1 (Minn.App.

---

4. According to a statement from a supervisor of the local grants program submitted in support of the city's motion for summary judgment, any alteration of the recreational use of the parcels will force the city to designate other replacement property for the required purposes and to obtain state and federal approval of the change. In connection with this appeal, the city submitted a more detailed statement from the manager of the local grants program. In a paragraph in their brief on appeal, respondents request that this court strike this more detailed statement because it was not considered by the district court and is not part of the district court file. We decline to do so. Respondents failed to place their request by separate motion as required by Minn. R. Civ.App. P. 127. And, although this more detailed statement was not part of the district court file, the statement does not contain evidence or information not already presented to the court.

1998) (stating that issue not raised in notice of review not before this court), *review denied* (Minn. Oct. 20, 1998).

 Generally, the decision to grant equitable relief is within the sound discretion of the district court and its decision regarding such relief will not be reversed absent an abuse of that discretion. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn.1979). In an action to determine adverse property claims, a district court has jurisdiction to determine any interests or issues that are fairly covered by the pleadings and evidence presented. *See Neill v. Hake*, 254 Minn. 110, 116–17, 93 N.W.2d 821, 827 (1958) (holding that court had jurisdiction to reform deeds in action to quiet title, even though exact relief not requested in pleadings). Thus, while respondents may not specifically have requested relief in the form of a prescriptive easement, we will assume for the purposes of this appeal that the district court had jurisdiction to grant such relief in this action to quiet title or for adverse possession.

 Nevertheless, a district court cannot sua sponte exercise its inherent authority to grant equitable relief in a manner that prejudices the opposing party by failing to give it an opportunity to present evidence to oppose the relief ultimately given. *See Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 280, 230 N.W.2d 588, 592 (1975) (stating court has inherent power to sua sponte summarily dispose of case in which no genuine issue of material fact exists). In addition, a district court's decision to grant equitable relief is not unlimited and must be supported by the facts and law. *See Lindell v. Lindell*, 150 Minn. 295, 299, 185 N.W. 929, 930 (1921) (stating that court "is invested with no arbitrary discretion; that is, a judge may not impose conditions [or grant relief] which in his individual opinion would work substantial justice between the parties," without regard to precedents and established principles).

The city argues that it was prejudiced because it was not given an opportunity to present factual or legal authority to oppose the granting of an easement. The city insists that if it had known of the court's intent to grant an easement, it could have introduced evidence to show respondents' unclean hands or to challenge the boundary or location of the proposed easement. The city further insists that it would have offered direct evidence concerning the impact the granting of an easement would have on its primary source of funding for the park, the federal grant. Because this type of evidence may be relevant when determining whether to grant equitable relief, the city was arguably prejudiced by the sua sponte nature of the district court's actions.

 The city further argues that the law and evidence fail to support the granting of an exclusive easement. Initially, we note that the parties agree that respondents were required to prove use or possession of the parcels prior to 1951, the date that the parcels were purchased by the school district. This is a correct statement under current Minnesota law. In *Heuer v. County of Aitkin*, 645 N.W.2d 753, 757–58 (Minn.App.2002), this court held that Minn.Stat. § 541.01 (2000), the statute prohibiting adverse possession of property dedicated to public use, also bars acquisition of prescriptive easements over public land. Our decision in *Heuer* further recognizes, however, that prescriptive easements over public land are possible if a party establishes that facts giving rise to such an interest existed before the land was purchased for public use. *Id.* at 759. Thus, it is undisputed that any easement granted to respondents must be based on evidence of use prior to 1951.

■ "[T]he elements of proof required to establish a prescriptive easement are the same as those necessary to establish adverse possession." *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn.1999). Both require a showing, by clear and convincing evidence, that the property has been used in an actual, open, continuous, exclusive, and hostile manner for 15 years. *Id.* The inherent difference between the two doctrines revolves around the fundamental difference between possessing land (adverse possession) and using land (prescriptive easement). *Id.*

The uses of the parcels claimed by respondents prior to 1951 are limited to garbage dumping, some storage of various items, some planting of bushes and other landscaping, and occasional mowing of the grass to keep the area neat. The evidence offered by respondents in opposition to the city's motion for summary judgment on respondents' adverse possession claim consisted of secondhand recollections of three living relatives of respondents' predecessors in title; some artifacts, including pieces of broken china and a silver spoon, discovered on the property by respondent Rand Claussen; old photographs taken at or near the property; the partial foundation of a building that did not extend into the disputed areas of land; and aerial photographs that respondents' expert used to opine that the disputed property and the property to the north, which is the current city-owned park property, were "inhabited, used and cared for in the 1930s, 1940s and 1950s in the same manner as the property to the South," which is respondents' property.

In order to support the easement granted here, this evidence must clearly and convincingly establish the necessary actual, open, hostile, continuous, and exclusive use of the disputed property by respondents' predecessors prior to 1951. The

city points out that the evidence offered by respondents consists "merely of random snapshots in time" that were either inadmissible or failed to establish that respondents are entitled to an easement based on their predecessors' use of the property. Indeed, the deficiencies found by the district court with respect to the lack of admissible evidence on the elements relating to respondents' adverse possession claim are equally relevant to any claim for an easement. If, as the district court determined, the nature and quality of the admissible evidence was inadequate to establish adverse possession, that evidence seems necessarily inadequate to establish what the district court characterized as an "exclusive" use easement.

Finally, we note that the easement granted by the district court was not a typical prescriptive easement, but gave respondents "unfettered" or "exclusive" use to the disputed property. This easement goes far beyond any use claimed or shown to have been exercised by respondents' predecessors prior to 1951. And, to the extent that this easement would interfere with the public's use of the city-owned park, the easement is contrary to public policy. We therefore conclude that the district court's grant of an exclusive use easement is unsupported by the law and the evidence.

## DECISION

Because respondents cannot obtain an exclusive use easement over property that has been publicly owned since 1951 and because respondents failed to produce sufficient, probative evidence to establish the elements necessary to prove that such an easement existed prior to 1951, the district court abused discretion by the sua sponte grant to respondents of an exclusive use easement. We therefore reverse that part (paragraph 5) of the district court's order

granting the easement and order the easement vacated.

**Reversed.**