*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1289**

Terry L. Gates, et al.,
Respondents,

vs.

Michael L. Macken, et al.,
Appellants.

**Filed May 9, 2016
Reversed and remanded
Jesson, Judge
Concurring in part, dissenting in part
Schellhas, Judge**

Olmsted County District Court
File No. 55-CV-14-6690

James P. Ryan, Jr., Ryan & Grinde, Ltd., Rochester, Minnesota (for respondents)

Daniel P. Doda, Doda & McGeeney, P.A., Rochester, Minnesota (for appellants)

Considered and decided by Schellhas, Presiding Judge; Jesson, Judge; and

Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant Michael Macken and respondent Terry Gates owned real property as

tenants in common. Along with their wives, who had spousal interests, Macken and

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

Gates mortgaged the property to secure a debt owed by Macken's solely owned corporation. The property was sold, and the lender bank applied the sale proceeds first to pay off the corporate debt, thus reducing the amount paid to Gates. The district court granted summary judgment on the Gateses' claim for unjust enrichment, concluding that the Mackens were unjustly enriched when the sale proceeds were applied first to pay off the entire corporate debt. Because we conclude that the district court misstated the burden of proof and that genuine issues of material fact exist, we reverse and remand for trial. But we direct the district court on remand to grant judgment for Macken's wife because no evidence shows that she was a shareholder of the corporation or unjustly enriched by payment of the corporate debt.

## FACTS

In 2002, Terry Gates and Michael Macken, who were friends from hunting and fishing trips, purchased a 90-acre parcel of recreational land in Dexter, Minnesota, as tenants in common. They financed the purchase with a $170,000 loan secured by a mortgage from Sterling State Bank. In October 2007, Macken and Gates executed a second mortgage in favor of Sterling to secure a loan for $5,119.

In November 2007, Macken asked Gates to enter into a third mortgage to provide additional collateral for a debt owed to Sterling by Macken Plumbing, Inc., a corporation solely owned by Macken.[1] Gates agreed, and on November 9, 2007, Macken and Gates and their wives, Rebecca Macken and Janice Gates, executed a third mortgage, which

---

[1] Macken's brief states that he was the "sole shareholder" of Macken Plumbing Inc. Documents in the record state that he was "a principal" and "a shareholder" of the business.

2

secured up to a maximum amount of $100,000 of Macken Plumbing Inc.'s $200,000 note to the bank. The mortgage defined "[b]orrower" as Macken Plumbing Inc., which included "all co-signors and co-makers signing the [n]ote and all their successors and assigns." The note is not contained in the record, and the record contains no evidence that Macken or Rebecca Macken personally co-signed or guaranteed the note.

The parties executed the third mortgage on the hood of a pickup truck, with a bank representative present. Macken states that they entered into the mortgage believing that each one-half of the property was worth $100,000, and Gates alleges that Macken told him that the mortgage would affect only Macken's half of the property. But Gates acknowledges that Macken made no promises to him when the mortgage was executed, Gates did not know what the mortgage was intended to secure, and he executed the mortgage to help Macken, a friend.

After the third mortgage was executed, the financial situations of Macken and his company deteriorated to the point that Macken was considering filing for bankruptcy relief. He began to negotiate workouts with the company's creditors, including Sterling, its largest creditor. In January 2009, the parties executed a modification of the third mortgage, extending it for another year.

Because of the financial pressures facing Macken and Macken Plumbing, Macken and Gates sold the property to a third party in November 2009 for $235,000. Before the closing, Macken and Gates did not discuss the split of the sale proceeds. But Gates alleges that they had an understanding that, after the sale, he would receive his half of the equity in the property.

3

After satisfying the first two mortgages and paying the sales commission, $158,971 in proceeds remained. Sterling first applied $113,971 of the proceeds to pay off Macken Plumbing's debt, and paid the remaining amount, $45,052, to Gates. Gates argued that he should instead have received one-half of the $158,971, based on his one-half interest in the property, and that Macken Plumbing's debt related only to Macken's half of the property. Macken denied telling Gates that he would be reimbursed for any shortfall resulting from the payoff of Macken Plumbing's debt.

Gates and his wife sought relief in district court, alleging that Macken had been unjustly enriched by the full payment of Macken Plumbing's debt before Gates received any sale proceeds, and moved for summary judgment. The district court granted summary judgment, concluding that on undisputed material facts, "Macken's business was the sole recipient of the loan secured by the Third Mortgage"; Macken would personally benefit from the loan payoff; and it was appropriate to pierce the corporate veil of Macken Plumbing Inc. to reach its corporate assets. The district court concluded that the Mackens had been unjustly enriched by the loan payoff because Gates did not intend to benefit Macken's business, but only to help a friend, and that in equity and good conscience, Gates should have received his full portion of the proceeds. This appeal follows.

## DECISION

A district court may grant summary judgment only if no genuine issues of material fact exist, and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. In reviewing a district court's grant of summary judgment, this court examines whether

4

there are any genuine issues of material fact and whether the district court erred in applying the law. *Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 353 (Minn. 2000). In so doing, we view the evidence in the light most favorable to the party against whom judgment was granted, but review the district court's application of the law de novo. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 831-32 (Minn. 2012).

Macken argues that the district court erred by granting summary judgment to Gates on his claim of unjust enrichment, an equitable doctrine. *Id.* at 838. Traditionally, under English common law, a party's legal and equitable rights were adjudicated in separate courts. *Holmes v. Campbell*, 12 Minn. 221, 227-28, 12 Gil. 141, 147 (1867). A party now seeks both legal and equitable relief in the same proceeding, but equity "functions as a supplement to the rest of the law where its remedies are inadequate to do complete justice." *Swogger v. Taylor*, 243 Minn. 458, 464, 68 N.W.2d 376, 382 (1955).

"Unjust enrichment requires that: (1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; (3) the defendant retain the benefit although retaining it without payment is inequitable." *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. App. 2011), *review denied* (Minn. Aug. 16, 2011). To prevail on a claim for unjust enrichment, a plaintiff must show not only that the other party benefits from the efforts or obligations of another, but also that the other party was "unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully," *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981), or that it would be "morally wrong" for the party to retain the benefit. *Schumacher v.*

5

*Schumacher*, 627 N.W.2d 725, 729–30 (Minn. App. 2001) (extending the doctrine of unjust enrichment to morally wrong acts).

The district court held that, on undisputed facts, Macken and his wife, Rebecca Macken, were unjustly enriched when the loan to Macken Plumbing Inc. was paid off from the sale proceeds before Gates received his proportional share. Based on the record presented at summary judgment, we disagree. Reviewing de novo the district court's application of the law, we conclude that the court misplaced the burden of proof, which muddied the summary-judgment analysis. Considering the record with the correct burden of proof in mind, and viewing the evidence in the light most favorable to Macken, we conclude that genuine issues of material fact exist on whether Macken personally benefitted from the payoff of the loan to Macken Plumbing.

The first requirement for a claim of unjust enrichment is that the plaintiff must *confer a benefit* on the defendant. *Zinter*, 799 N.W.2d at 247. This benefit can be found if a defendant is enriched by either an increase in assets or a decrease in liabilities. Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d (2011). The district court stated in its order that "Macken has provided no evidence that he was not personally liable on the debt owed by his business." But the party seeking to establish unjust enrichment has the burden to show that the other party "knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (quotation omitted). Therefore, the district court misstated the burden of proof, which requires Gates to show that Macken received a personal benefit when the

6

debt owed on his business was paid off. Relevant evidence on this issue might include, for instance, Macken's guarantee of the corporate obligation, or his signature in a personal capacity on the note secured by the mortgage. In his brief, Gates alleges facts that, if true, are indicative of a personal benefit. For example, he states that "[a]ppellants satisfied the Sterling bank debt through the use of both corporate and personal funds. By the [a]ppellants allowing their debts to be satisfied through the use of [r]espondents' funds, they retained a benefit in the overall reduction of debt due to Sterling Bank." But there are no facts in the record to support this allegation. The district court noted that Macken's assertion of personal financial difficulty "suggests" that he would benefit from using the jointly-owned property as collateral for his business debts. But the law requires more than a suggestion of liability by Macken to support summary judgment in favor of Gates.

We also disagree with the district court that, as a matter of law, it would be appropriate to "pierce the corporate veil" to attribute Macken Plumbing's debt, and the consequences of its payoff, to Macken personally. "Doing business in a corporate form in order to limit individual liability is not wrong; it is, in fact, one purpose for incorporating." *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979). Under limited circumstances, Minnesota courts may disregard the corporate form when the corporation acts as a mere "alter ego" or "instrumentality" of the controlling party and an "element of injustice or fundamental unfairness" is present. *Id.* (quotation omitted). In applying this theory, courts examine the reality of how the corporation operated and the individual shareholder's relationship to the corporation. *Id.*

7

They look for a number of factors, including the failure to observe corporate formalities, insufficient capitalization, nonpayment of dividends, siphoning of funds by a dominant shareholder, the nonfunction of other directors and officers, an absence of corporate records, the insolvency of the corporation at the time of the transaction, and the existence of the corporation as a "mere[] façade for individual dealings." *Id*.

Here, the district court did not conduct an analysis of the *Victoria Elevator* factors described above. The record at the summary-judgment stage lacks information on many of these factors, such as whether corporate records were kept or formalities observed, whether Macken personally siphoned funds from the corporation, or whether he used the corporation only as a façade for his individual dealings. *See id.*[2] Although the parties do not dispute that Macken had an ownership interest in Macken Plumbing, "whether a party holds an ownership interest in the entity is not dispositive" on the issue of piercing the corporate veil. *Equity Tr. Co. v. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. App. 2009). In addition, attributing the corporate debt and its payoff to Macken personally would also require evidence that he operated Macken Plumbing in a fundamentally unfair or unjust manner. *Victoria Elevator*, 283 N.W.2d at 512.

The summary-judgment standard requires Gates to show that no genuine issue of material fact exists on the issues of whether Macken personally benefitted from the payoff of Macken Plumbing's corporate debt or whether it is appropriate to pierce the corporate veil. The burden falls on Gates, not Macken, to come forward with this proof.

---

[2] This failure may have been the result of the district court's misstatement of the burden of proof, stating that with respect to whether the third mortgage imposed a liability only on Macken Plumbing, "Macken has offered no evidence that this was the case."

*See Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988) (stating that "[t]he party moving for summary judgment under Rule 56 . . . must demonstrate no genuine issue of material fact exists"). Gates cites *Toomey v. Dahl*, 63 F. Supp. 3d 982, 999-1000 (D. Minn. 2014), in which the Minnesota federal district court held that a plaintiff's complaint stated a sufficient claim to survive a motion to dismiss when it recited allegations that the defendant's business had benefitted from the plaintiff's loans. But *Toomey* does not govern the outcome of this case at the summary-judgment stage because the standard for a rule-12 motion to dismiss for failure to state a claim is different from the standard for granting summary judgment. *See Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008) (noting that the standard for dismissal under Minn. R. Civ. P. 12.02(e) "is whether the complaint sets forth a legally sufficient claim for relief").

"Equity follows the law," *Kingery v. Kingery*, 185 Minn. 467, 470, 241 N.W. 583, 584 (1932), and a district court's decision to grant equitable relief is not unlimited, but must be supported by the facts and the law. *Claussen v. City of Lauderdale*, 681 N.W.2d 722, 726 (Minn. App. 2004), *review denied* (Minn. Sept. 21, 2004). Because we conclude that the district court erred by concluding as a matter of law that Gates met the first requirement for unjust enrichment, a personal benefit to Macken, we need not address the remaining requirements. We reverse and remand the matter for trial.[3]

---

[3]In addition, on remand, the district court may wish to address a possible calculation error in disbursement of the sale proceeds: although the mortgage secured only $100,000 of Macken Plumbing's $200,000 debt, the sale proceeds were distributed to pay off nearly $114,000 of that debt.

We conclude, however, that summary judgment is appropriate as a matter of law in favor of Rebecca Macken on Gates's unjust-enrichment claim. Rebecca Macken was not a shareholder of, or affiliated with, Macken Plumbing, her only interest in the Dexter property was a spousal interest, and there is no evidence that she received any proceeds from the property sale. Therefore, we direct the district court on remand to enter judgment in her favor.

**Reversed and remanded.**

**SCHELLHAS**, Judge (concurring in part and dissenting in part)

I concur with the majority's opinion that summary judgment is appropriate as a matter of law in favor of Rebecca Macken because no genuine issue of material fact exists regarding whether Rebecca Macken was unjustly enriched by the payment of Macken Plumbing Inc.'s indebtedness. The record contains no evidence that Rebecca Macken owned any shares in Macken Plumbing Inc. or that she co-signed or guaranteed any of Macken Plumbing Inc.'s bank debt. But I respectfully dissent from the majority's opinion that the district court erred by concluding as a matter of law that Michael Macken was unjustly enriched by the payment of Macken Plumbing Inc.'s indebtedness through the use of Gates's share of real-estate sale proceeds. I respectfully disagree with the majority that Gates failed to meet the first requirement for unjust enrichment—that Michael Macken received a personal benefit. I would conclude that no genuine issue of material fact exists regarding whether Michael Macken received a personal benefit from the payment of Macken Plumbing Inc.'s indebtedness through the use of Gates's share of real estate sale proceeds.

Because the record does not contain a copy of the promissory note given by Macken Plumbing Inc. to Sterling State Bank, we do not know whether Michael Macken co-signed the note or personally guaranteed the corporate indebtedness. The district court concluded that piercing the corporate veil of Macken Plumbing Inc. was appropriate in order to assess personal liability against Michael Macken in the amount of $34,433. Although I do not agree that piercing the corporate veil of Macken Plumbing Inc. is necessary to assess personal liability against Michael Macken, "[this court] may affirm a

C/D-1

grant of summary judgment if it can be sustained on any grounds." *Doe 76C v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

Michael Macken was the sole shareholder of Macken Plumbing Inc. From Gates's share of real-estate sale proceeds, the amount of $34,433 was used to pay Macken Plumbing Inc.'s indebtedness. Even if Michael Macken had no personal liability on the indebtedness to Sterling State Bank, the payment of Macken Plumbing Inc.'s indebtedness to the bank increased the book value of Macken Plumbing Inc.'s stock. *See Beerly v. Dep't of Treasury*, 768 F.2d 942, 945 (7th Cir. 1985) ("Book value is the difference between the firm's assets and liabilities as valued on its books of account, divided by the number of shares."); *Bass v. Ring*, 201 Minn. 598, 299 N.W. 679, 601−02 (1941) ("The net worth or book value of the corporation, determinative of the book value of its stock, was but the favorable difference between its assets and liabilities correctly computed."). Whatever the book value of Macken Plumbing Inc.'s stock before the reduction of its indebtedness, the book value increased after the reduction in indebtedness. Particularly as the corporation's sole shareholder, payment of the corporate debt conferred a benefit on Michael Macken.

On the facts in this case, it would be "morally wrong" for Michael Macken to retain the benefit of Gates's payment of Macken Plumbing Inc.'s indebtedness. *See Schumacher v. Schumacher*, 627 N.W.2d 725, 729−30 (Minn. 2001) (extending the doctrine of unjust enrichment to morally wrong acts). I would affirm the district court's grant of summary judgment to Gates against Michael Macken in the amount of $34,433.